UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
    **v.**       )    Criminal Action No. 09-183 (RMC)
                                    )
**PAUL NICHOLAS RAYMOND,**          )
                                    )
    **Defendant.** )
_____ )

## MEMORANDUM OPINION

Paul Nicholas Raymond was charged in an Information filed on July 29, 2009, with one count of traveling to engage in illicit sexual conduct and one count of possessing child pornography. Mr. Raymond pleaded guilty to both counts on August 14, 2009. On December 22, 2009, he was sentenced on each count to concurrent five-year prison terms and ten years of supervised release. Mr. Raymond's supervised release began on September 20, 2013 and will expire in September 2023.

Having successfully completed his prison term and more than five years of supervision, Mr. Raymond asks the Court to terminate his supervision early under 18 U.S.C. § 3583(e)(1). After carefully considering his motion, the government's opposition, and the full record, the Court will grant Mr. Raymond's motion and terminate his supervision effective September 20, 2019.

### I.   BACKGROUND

Paul Raymond is now 57 years old and a dual citizen of the United States and the United Kingdom. He has lived in the metropolitan area of the District of Columbia since his release from prison in 2013, visiting his elderly parents in England only when specifically

1

approved by the Court. His parents have since passed and Mr. Raymond would like to have the option to re-locate to England, which is very difficult as long as he is on supervised release.

Mr. Raymond states that he completed the 18-month residential sex offender treatment program at FCI Devens in Massachusetts while incarcerated. He "became a mentor for others in the program and facilitated re-entry guidance sessions." Mot. for Early Termination of Supervised Release [Dkt. 36] at 2. After his release, Mr. Raymond completed all therapy sessions as directed.

It is not controverted that, since his release, Mr. Raymond has passed every polygraph test, passed every drug test, completed all therapy required of him, never missed a meeting with his probation officer, and maintained computer monitoring, at his own expense, without any violations. When visiting England, Mr. Raymond has complied with every condition, and has additionally registered as a sex offender with British authorities, which was not required.

Mr. Raymond has maintained a stable residence and has worked several odd jobs while searching for something more permanent. As of briefing, he was enrolled in a paralegal program at Georgetown.

## II.   LEGAL STANDARD

When considering a request for early termination of supervised release, the Court must first consider: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with education or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution

2

to any victims of the offense. *See* 18 U.S.C. § 3583(e); *see also United States v. Harris*, 258 F. Supp. 3d 137, 144 (D.D.C. 2017). These factors are only a subset of the § 3553(a) factors considered at sentencing because "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). That is to say, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.*; *see also Harris*, 258 F. Supp. 3d at 144-45 (discussing legislative history). "The relevant factors under § 3553(a) are, consequently, evaluated mindful of the Supreme Court's clear articulation of the purpose of supervised release and the district court's discretion to limit terms of supervised release to those who need it." *Harris*, 258 F. Supp. 3d at 145.

After considering these factors, the Court may "terminate a term of supervised release and discharge the defendant at any time . . . after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

### III. ANALYSIS

#### A. Section 3553 Factors

*Nature and Circumstances of the Offense.* In 2009, Mr. Raymond made plans to engage in sexual conduct with the 4-year-old relation of a man he met online. That man was an undercover officer. After Mr. Raymond's arrest, officers found 2 videos and approximately 50 images of child pornography on his computer. Clearly this is a serious crime and Mr. Raymond was incarcerated accordingly.

At this juncture, however, "the question before this Court is not whether the defendant should be punished further, but rather whether his . . . supervision . . . should remain in place in order to ensure that his life continues to stay moving in the right direction." *Harris*, 258

F. Supp. 3d at 146 (emphasis omitted). This question is best considered along with the next two factors, although the Court remains mindful of Mr. Raymond's crime.

*Deterrence and Protecting the Public*. As referenced above, in addition to his incarceration, Mr. Raymond completed an 18-month residential sex offender treatment program and mentored others in that program. He has completed all of his therapy sessions since his release. He has complied with and satisfied every element of his supervised release, including polygraph testing, drug testing, and electronic monitoring. He registered as a sex offender not only in this area, as required, but also when visiting in England, which was not required. Mr. Raymond has also enrolled himself in programs to help him re-integrate more fully into society, such as a paralegal course offered through the District of Columbia's Office on Returning Citizens Affairs.

"The defendant's maintenance of an unblemished record of compliance with his conditions of release for over [five] years is, perhaps, the best indicator of his ability to continue as a law-abiding member of his community." *Id.* at 146-47. It appears from the record that Mr. Raymond has been an active participant in his own treatment and the treatment of others and has completed therapy; Mr. Raymond has demonstrated a commitment to personal change so that the risk of recidivism and to the public are reduced.

*Training or Correctional Treatment*. Mr. Raymond completed treatment during his incarceration and therapy after his release. The government does not argue that additional training or treatment is scheduled or necessary. Nor does it argue that circumstances make it particularly likely that Mr. Raymond specifically will reoffend. This factor does not support the need for continuing supervision.

*Sentencing Guidelines and Policy Statements*.  Under the Sentencing Guidelines, the term of Mr. Raymond's supervised release was to be no less than the statutory minimum for his crime:  in this case, five years.  He completed those five years in September 2018.

The Guidelines also include two relevant policy statements.  On the one hand, when setting the initial term of supervised release, the Sentencing Commission's policy statement is that, for sex offenses, "the statutory maximum term of supervised release is recommended."  U.S. Sentencing Guidelines § 5D1.2, p.s.  For Mr. Raymond, the statutory maximum term of supervised release was life.  On the other, the Commission's commentary to the same section—which is treated as a policy statement—notes that "[t]he court has authority to terminate or extend a term of supervised release" and "is encouraged to exercise this authority in appropriate cases."  *Id.* at comment. (n.5).  Indeed, the commentary provides as an example of a candidate for early termination a defendant who "while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."  *Id.*

This Court previously determined that lifetime supervision of Mr. Raymond was unnecessary.  Further, the Commission's first policy statement applied at Mr. Raymond's sentencing but it is no longer clear that it should continue to apply to these circumstances.  And while the government argues that Mr. Raymond received a below-guidelines sentence of incarceration, the Court notes again that supervised release and incarceration are not substitutes for one another.  *See* U.S. Sentencing Guidelines Ch. 7, Pt. A(2)(b), intro. comment. ("Unlike parole, a term of supervised release does not replace a portion of the sentence of imprisonment."); *cf. Johnson*, 529 U.S. at 58-59 ("Though interrelated, the terms are not interchangeable.").

Rather, Mr. Raymond's excellent performance under supervision is consistent with the Sentencing Commission's policy statement and its example of early termination supports the early termination of supervision in this case.

*Sentencing Disparities*. Mr. Raymond received a sentence of incarceration and a term of supervised release comparable to others in this district at the time, even if his sentence was below the range provided by the Guidelines. That said, the Supreme Court has opined that defendants "may, of course, vary in the degree of help needed for successful reintegration" and "Congress aimed . . . to use the district courts' discretionary judgment to allocate supervision to those releasees who needed it most." *Johnson v. United States*, 529 U.S. 694, 709 (2000). At this point, keeping Mr. Raymond on supervised release simply because other offenders may remain on supervised release would "undermine the case specific inquiry required in evaluating a motion for early termination of supervised release." *Harris*, 258 F. Supp. 3d at 145.

*Restitution*. No restitution was required in this case and so this factor adds nothing to the Court's considerations.

### B. Post-Incarceration Conduct and the "Interest of Justice"

The crux of the government's argument is that Mr. Raymond must exhibit "exceptionally good behavior"—not merely compliance with the terms of his supervised release—to justify early termination of supervised release. Gov't's Opp'n to Def.'s Request for Early Termination of Supervised Release (Opp'n) [Dkt. 38] at 3; c*f. United States v. Etheridge*, 999 F. Supp. 2d 192, 196 (D.D.C. 2013) (citing *United States v. Lussier*, 104 F.3d 32, 33 (2nd Cir. 1997)). Thus, while the government "commends the defendant for his successes during his period of supervision," it argues that "there is nothing unusual or extraordinary in the fact that the defendant has remained law-abiding or completed his court-mandated counseling." Opp'n at 3-4.

While some courts have stressed that early release is a "rare" phenomenon that mere compliance with the terms of supervision does not satisfy, *see Etheridge*, 999 F. Supp. 2d at 196-97 (discussing cases), other courts have found that the words of the statute are not so stringent; "exceptional" behavior is a requirement nowhere to be found. *See Harris*, 258 F. Supp. 3d at 149-50. And while it might be that the Judiciary should expect former felons to follow directions, obey the law, and re-design their lives, it is all too obvious that such post-incarceration success is not achieved by many who make the attempt. Thus, Mr. Raymond's 100% compliance with each term of his supervised release for over five years is, actually, fairly extraordinary. Although that may not satisfy the standard set by the government, the Court finds he has satisfied the standard set by the statute and that "continuing the defendant's probation would have no real value as far as law enforcement or any other community interest is concerned." *Etheridge*, 999 F. Supp. 2d at 199.

Notwithstanding, the government argues that Mr. Raymond initially received a sentence of incarceration well below his Guidelines range so that the original term of supervised release is particularly important to ensuring the safety of the community. The government also emphasizes that child exploitation and child pornography are very serious offenses which require polygraph tests and monitoring of offenders' electronic devices during supervision to protect the community. These arguments are valid. But Mr. Raymond has acquitted himself admirably during the last five years showing that he can "conduct himself in a law-abiding, productive manner," even in the face of intense and intrusive supervision. *Harris*, 258 F. Supp. 3d at 150. Mr. Raymond has gone through therapy, passed every polygraph, and satisfied electronic monitoring; the Probation Office has not objected to early termination of his supervision. His behavior supports early termination of his supervised release.

For the same reasons, early termination is also in the "interest of justice." On this point, the Court notes that, having successfully completed five years of supervised release, Mr. Raymond has already satisfied the minimum period of supervision recommended by the Guidelines for his crimes. Accordingly, the Court will reduce Mr. Raymond's term of supervision from 120 months to 72 months.

## IV. CONCLUSION

Having considered the necessary factors as applied to this case, the Court is persuaded that the termination of supervision is "warranted by the conduct of the defendant" and is in "the interest of justice." 18 U.S.C. §3583(3)(1). Accordingly, the Court will order Mr. Raymond's supervision to end effective September 20, 2019.


Date: April 25, 2019

ROSEMARY M. COLLYER
United States District Judge